LAW OFFICES OF STEVEN R. FOX
Steven R. Fox, CBN 138808
17835 Ventura Boulevard, Suite 306
Encino, California 91316
(818) 774-3545   Fax (818) 774-3707

Attorneys for Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - NORTHERN DIVISION

| | |
|---|---|
| In re | CASE NO. ND 10-10091 RR |
| | CHAPTER 11 |
| Corprint Inc, | EMERGENCY MOTION TO AUTHORIZE DEBTOR TO PAY PREPETITION PRIORITY EMPLOYEE WAGES; MEMORANDUM OF POINTS AND AUTHORITIES |
| Debtor. | 11 U.S.C. §§ 105(a), 363(b) and 507(a)(4) and (5) |
| | Date:   HEARING TO BE SET<br>Time:<br>Place: |
| | Petition filed January 11, 2010 |

TO THE HONORABLE BANKRUPTCY JUDGE:

COMES NOW the Debtor under 11 U.S.C. §§ 105(a), 363(b) and 507(a)(4) and (5) with its Emergency Motion to Authorize Debtor to Pay Prepetition Priority Employee Wages ("Payroll Motion").

I.

## Summary of Relief Requested

1.      The Debtor seeks an order from the Court authorizing it to pay payroll due to be paid post-petition on January 15, 2010, and for the two week prepetition

1   period ending January 8, 2010.  The employees' wages were earned prepetition

2   but are within the statutory amount listed at 11 U.S.C. §507(a)(4) and (5).  This

3   request also includes payment of payroll tax liabilities for this payroll period.  The

4   Debtor also has obligations to sub-contractors, former employees who provide

5   work on a project basis to the Debtor when needed, also due to be paid on

6   January 15, 2010 for the same time period.

7   2.      The Debtor requests that the Court shorten time for notice of a hearing on

8   this Motion and hold a hearing on the Motion at least 24 hours prior to January

9   15, 2010, when payroll is set to be paid.  A copy of the proposed payroll, based

10  on the previous week's payroll, and the sub-contractor payments are attached to

11  the First Day Declaration of Marc Lewis, as Exhibit "L," and incorporated here by

12  reference as though set forth in full here.

13  3.      The Debtor seeks authority to: (a) pay all prepetition priority employee

14  wages and other compensation (within the meaning set forth at §507(a) of the

15  remaining employees in an amount not to exceed $10,950 to any one individual;

16  (b) reimburse all prepetition employee business expenses of the remaining

17  employees; (c) make all payments for which prepetition payroll deductions were

18  made; (d) continue to honor and process any prepetition obligations with respect

19  to payroll taxes on a post-petition basis; (e) pay all processing costs and

20  administrative expenses relating to the foregoing payments and contributions; (f)

21  make payments to third parties incident to the foregoing payments and

22  contributions; and (g) honor other prepetition payroll checks that employees did

23  not negotiate prepetition (but within the $10,950 priority limit).

24  4.      Affinity Bank holds what appears to be a security interest in many of the

25  Debtor's assets including monies.  There are no other creditors holding security

26  interests in the Debtor's monies or receivables.  To the extent Affinity Bank is a

27  secured creditor, it is over-secured.  Granting this Motion will enhance Affinity

28  Bank's position by preserving the business as an ongoing concern and by

1 maintaining the Debtor's business which generate monies apparently subject to
2 Affinity Bank's security interest.

3                                                    II.

4                                    **The Debtor's Background**

5 5.        The Debtor commenced its case by filing a voluntary petition for relief
6 under chapter 11 of the U.S. Bankruptcy Code on January 11, 2010. It is, and
7 continues to be, a debtor-in-possession. No trustee or examiner has been
8 appointed. No creditors' committee has been formed.

9 6.        The Debtor maintains on a current basis workers compensation, general
10 liability and products liability insurances.

11 7.        <u>The Business</u>. The Debtor is a California corporation. Corprint is in the
12 business of supporting corporate accounts with their procurement needs for
13 printing, advertising materials, promotional and marketing materials, warehousing
14 of ordered items such as printing, advertising materials, promotional and
15 marketing materials. Corprint's clients will turn to Corprint to assist the clients with
16 obtaining materials or products for marketing and will also have Corprint hold or
17 warehouse the client's printing, advertising and/or promotion/marketing materials
18 for the clients. The services which Corprint offers are useful to companies which
19 advertise and market but which also seek to keep their operating expenses lower.
20 Corprint is not a manufacturer.   Corprint out sources everything but fulfillment
21 and warehousing.

22 8.        In addition, Corprint offers support for rebate programs. As one example,
23 a guitar products manufacturer will reach an agreement with a retail store under
24 which all customers who purchase certain guitar products in a given time will
25 receive a rebate or additional product if the customers provide certain information
26 and meet the criteria of the rebate program. Corprint is hired to receive the
27 information, screen the requests for the rebate, and arrange for the rebate of
28 monies or product. These rebate programs are ongoing and growing. For each

1    rebate program, the client gives monies to Corprint for the rebate programs. As
2    customers respond to rebate programs by forwarding to Corprint rebate requests,
3    Corprint pays the rebates. This program is an essential manner in which Corprint
4    lowers its clients' operating costs.

5    9.    The Problems Leading to the Chapter 11 Filing. The Debtor has
6    traditionally been a profitable company. However, the Debtor suffered from a
7    concentration problem, that is, one account, the Guitar Center, accounted for
8    approximately 75 to 80% of Corprint's business. When the Guitar Center was
9    bought out approximately 2 years ago, Corprint lost approximately 95% of the
10   Guitar Center's business. In addition to the Guitar Center, a fairly active
11   customer, Robbins Bros. filed its own chapter 11 bankruptcy costing Corprint
12   $80,000 to $100,000. An account manager left the company in summer, 2009,
13   and took a significant book of business with him. The accounts taken represented
14   a projected $1.5 million in work for these accounts in year 2010. With the falling
15   sales and the recession, the Debtor lost management personnel and is in the
16   process of rebuilding the management structure.

17                                    II.

18              The Debtor has Taken Significant Steps to Reorganize

19              and Will Continue to Do So During the Chapter 11 Case.

20   10.    Corprint dramatically reduced its overhead including the number of
21   employees employed. Corprint is marketing new business. It has had success in
22   opening new accounts. Corprint is diversifying its accounts as well and is looking
23   to increase its rebate programs.

24                                    III.

25                            Post-Petition Events

26   11.    The Debtor has taken steps to comply with its obligations as a Debtor-in-
27   Possession. To this end, the Debtor has filed completed schedules and the
28   Statement of Financial Affairs. The Debtor has filed various first day motions and

1  is in the process (or already has) provided to the U.S. Trustee proof of insurance
2  and other compliance documentation.

3  12.    In this chapter 11 case, the Debtor will formulate a plan to pay creditors'
4  claims.  Prepetition, the Debtor engaged in discussions with a potential purchaser.
5  Those talks will continue.  The Debtor intends to propose a plan which will pay a
6  substantial dividend to unsecured creditors.

7                                                IV.

8                The Debtor's Assets, Income, Expenses and Liabilities.  [1]

9  13.    Assets.  The Debtor's assets are listed in Exhibit "A," to the Lewis First Day
10 Declaration.  The Debtor's Balance Sheet is attached there as Exhibit "B."

11 14.    Income and Expenses.  Exhibit "C" to the Lewis Declaration consist of
12 historical income and expenses for the Debtor.

13 15.    Secured Claims.  As of January 8, 2010, the California Secretary of State's
14 official records reflect the filing of various Financing Statements to protect lessors
15 (Exhibits "E," "F," "G" and "H" to the Lewis First Day Declaration) and the filing of
16 a Financing Statement in favor of Affinity Bank securing inventory, chattel paper,
17 accounts, equipment general intangibles and consumer goods, owned now or
18 acquired later (Exhibit "D").  Copies of the Affinity promissory note, security
19 agreement and financing Statement are attached to the Lewis Declaration as
20 Exhibit "I."  The Debtor owes approximately $500,000to Affinity Bank.  Exhibit "J"
21 to the Lewis Declaration.

22 16.    Unsecured Claims.  Corprint's  unsecured claims will likely exceed
23 $2,000,000.00.  Corprint has perhaps 70 unsecured creditors.  (Exhibit "A")

24                                                VII.

25                        The Court Should Authorize the Debtor

26

27 ――――――――――――――――――

28    [1]        The exhibits referenced here are attached to the First Day Declaration of
                 Marc Lewis.

1            to Pay the Prepetition Payroll and Subcontractors.

2    17.    Prepetition, the Debtor reduced its payroll in order to accommodate the

3    loss of the Guitar Center account and the recession. The number of employees

4    has dropped significantly. On an as needed basis, the Debtor will engage

5    terminated employees to handle specific projects. They handle the projects on

6    their own schedule. The remaining employees provide crucial functions for the

7    Debtor. They design and oversea marketing campaigns for clients. The

8    employees' knowledge of the business operation and their skills are essential for

9    the Debtor's continued operation. Without the employees there will be no

10    business.

11    18.    The Debtor pays its employees every twice each month for wages earned

12    during the prior payroll period. On Friday, January 15, 2010, the Debtor's

13    employees (and the subcontractors) are due to be paid for the two week period

14    ending January 8, 2010. For the employees, the gross payroll for the full period

15    will be approximately $21,817 which includes payroll taxes (approximately 10% of

16    the gross payroll.) For the sub-contractors, the monies owed will be approximately

17    $2,350.50.

18    19.    The proposed payroll listing and the monies owed to the sub-contractors

19    are attached to the Lewis First Day Declaration as Exhibit "L"

20    20.    The payroll tends to be somewhat regular except for times when

21    employees take vacations or when job runs are busier or lighter. The Debtor

22    believes that the payroll obligation for the current period will be approximately that

23    when is found at Exhibit "A." Given the timing of this filing, the Debtor does not

24    presently have final figures for each employee's payroll. The Debtor requests

25    authority to deviate from stated payroll by as much as 15% for any one non-

26    management level employee to account for overtime.

27    21.    In the normal course, prepetition debts are paid through the plan. The

28    employees, if not paid, will not wait to be paid through the plan and instead will

- 6 -

1 largely leave the Debtor's employment. This will severely impact the Debtor's

2 ability to reorganize and impact the value of Affinity Bank's collateral.

3 22.      The employees are still employed. By paying the prepetition payroll

4 currently due, the employees will keep working and the Debtor will be able to

5 honor its job commitments, meet company expenses and work to reorganize. The

6 Debtor's prospects for reorganization are good. The Debtor has analyzed its

7 financial and operational problems, identified reasons for cash flow problems,

8 identified solutions and is beginning to implement them.

9 23.      To minimize the personal hardship that remaining employees will suffer if

10 employee-related obligations are not paid when due or expected, and to maintain

11 morale and an essential workforce during this critical time, the Debtor seeks

12 authority to: (a) pay all prepetition employee wages and other compensation of

13 the remaining employees in an amount not to exceed $10,950 as to any one

14 individual; (b) reimburse all prepetition employee business expenses of the

15 remaining employees; (c) make all payments for which prepetition payroll

16 deductions were made; (d) continue to honor and process any prepetition

17 obligations with respect to payroll taxes on a post-petition basis; (e) pay all

18 processing costs and administrative expenses relating to the foregoing payments

19 and contributions; (f) make payments to third parties incident to the foregoing

20 payments and contributions; and (g) honor other prepetition payroll checks that

21 employees did not negotiate prepetition (but within the $10,950 priority limit).

22 24.      Insider Compensation. The Debtors' principals and members of their

23 family work for Corprint. Notices of setting insider compensation have been

24 served for all insiders. The Debtor's principals will await the passing of the 15 day

25 waiting period under the U.S. Trustee's Guidelines before drawing their

26 compensation for the prepetition priority period and the post-petition payroll.

27 Payroll to the two principals will be delayed. The Debtor requests that as to the

28 other insiders, their payrolls not be delayed. What follows is a chart of the non-

- 7 -

1   principal insiders and their gross wages per payroll period: Kristina Slover -

2   $2,642 (two week gross); Scott Lewis  - $2,124 (two week gross); and Michael

3   Bauer - $1,398 (two week gross).

4   25.    This Motion has been served on the U.S. Trustee, on Affinity Bank and on

5   the 20 largest unsecured creditors.

6        **WHEREFORE** the Debtor prays that the Court:

7        Authorize the Debtor to: (a) pay all prepetition priority employee wages and

8        other compensation of the remaining employees (within the meaning set

9        forth at §507(a) in an amount not to exceed $10,950 as to any one

10       individual (consistent with Exhibit "L"), to pay the sub-contractors and permit

11       a deviance of up to 15% for any one employee to account for a higher

12       payroll for a particular employee; (b) reimburse all prepetition employee

13       business expenses of the remaining employees; (c) make all payments for

14       which prepetition payroll deductions were made; (d) continue to honor and

15       process any prepetition obligations with respect to payroll taxes on a post-

16       petition basis; (e) pay all processing costs and administrative expenses

17       relating to the foregoing payments and contributions; (f) make payments to

18       third parties incident to the foregoing payments and contributions; and (g)

19       honor other prepetition payroll checks that employees did not negotiate

20       prepetition (but again within the $10,950 priority limit).

21       The Debtor also requests the Court authorize the Debtor to pay insider

22   compensation to the insiders identified above without waiting for the completion of

23   the 15 day U.S. Trustee's Guidelines waiting period.

24   Dated: January 11, 2010                    Respectfully submitted,

25                                              LAW OFFICES OF STEVEN R. FOX

26                                              _____

27                                              Steven R. Fox, proposed counsel for
                                                Corprint, Inc., Debtor-in-Possession

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2      The Debtor's workers have provided labor and services for the Debtor and

3  are due to be paid on January 15, 2010, for work provided the previous and

4  prepetition payroll period.  Normally, a prepetition wage claim can be paid

5  through the plan on a priority basis at least to the extent of the priority with the

6  balance paid as an unsecured claim.  However, without payment of their wages,

7  employees will not work for the Debtor which will be unable to honor its on-going

8  jobs and to handle future jobs.  The Debtor's reorganization would be imperiled.

9      Courts have exercised its equitable powers to permit chapter 11 debtors to

10  pay prepetition commissions within the limit found at 11 U.S.C. §507(a)(3).  See In

11  re Spirit Holding Co., Inc., 157 B.R. 879 (Bankr. E.D. Mo. 1993)

12      The bankruptcy court in In re Braniff, 218 B.R. 628, 634 (Bankr. M.D. Fla.

13  1998) addressed this problem as follows:

14      In the early days of this case, the court entered orders permitting the
        post-petition payment of certain pre-petition wage and wage-related claims.
15      As is often the case in operating Chapter 11 cases, the court did this for two
        reasons.  First, it was necessary that Braniff pay its employees for work
16      performed pre-petition if the employees were to remain on the job
        post-petition.  The filing of a bankruptcy case presents many uncertainties
17      for employees.  If their pay is interrupted, employees are obviously not
        going to remain on the job despite the fact that their continuation in place is
18      vitally important for the debtor.

19      The Braniff court noted that only in "the direst of circumstances" will the

20  priority wages not be paid as another rationale for paying the wages early.  Id.

21      The Court has the authority under Sections 105 and 363 to authorize the

22  Debtor to use cash collateral to pay the employee's prepetition payroll despite the

23  creditors' security interests in the receivables and monies.  This is especially true

24  where the monies spent will have a measurable and positive impact on the

25  creditors' security.  Paying payroll encourages employees to work, to collect

26  receivables and to generate new receivables.  Security Leasing Partners vs.

27  ProAlert, LLC, 314 B.R. 436 (9th Cir. B.A.P. 2004)

28

1    Under section 507(a), the employees enjoy a high priority for payment of

2    the monies owed from last week's payroll.  None of the employees' claims

3    exceeds the amount that the Code provides for as priority.

4    **WHEREFORE** the Debtor prays that the Court

5    Authorize the Debtor to: (a) pay all prepetition priority employee wages and

6    other compensation (within the meaning of §507(a) of the remaining

7    employees in an amount not to exceed $10,950 as to any one individual

8    (consistent with **Exhibit "L"**) plus up to 15% per employee to account for a

9    higher payroll for a particular employee and to pay the sub-contractors; (b)

10   reimburse all prepetition employee business expenses of the remaining

11   employees; (c) make all payments for which prepetition payroll deductions

12   were made; (d) continue to honor and process any prepetition obligations

13   with respect to payroll taxes on a post-petition basis; (e) pay all processing

14   costs and administrative expenses relating to the foregoing payments and

15   contributions; (f) make payments to third parties incident to the foregoing

16   payments and contributions; and (g) honor other prepetition payroll checks

17   that employees did not negotiate prepetition (but again within the $10,950

18   priority limit).

19   The Debtor also requests the Court authorize the Debtor to pay insider

20   compensation to the insiders identified above without waiting for the completion of

21   the 15 day U.S. Trustee's Guidelines waiting period.

22   Dated: January 11, 2010                    Respectfully submitted,

23                                              LAW OFFICES OF STEVEN R. FOX

24

25                                             Steven R. Fox, proposed counsel for

26                                             Corprint, Inc., Debtor-in-Possession

27

28